UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                              )
                                    )    Chapter 11
AGRIPROCESSORS, INC.                )
                                    )    Bankruptcy No. 08-02751
     Debtor.                        )


**ORDER RE: TRUSTEE'S MOTION TO PAY
USDA APPROVED PASA CLAIMS**

     A hearing was held on January 26, 2009, concerning, in part, the payment of approved PASA claims.  The Court has reviewed all documents filed relating to this motion.  The Court concludes that this matter is ready for resolution without the need for further evidence, briefing, or hearings.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) or (M).

**STATEMENT OF THE ISSUE**

     Trustee filed a Motion to Pay USDA Approved PASA Claims on January 8, 2009.  He asserts that payment of these claims should initially be made from Bond Funds held by Luana Savings Bank.  Trustee also holds more than $7 million in trust under PASA which is available to pay these claims.  Luana Savings Bank raises two arguments.  First, it argues it is entitled to set off its claim of more than $800,000 against the Bond Funds.  Second, it argues Trustee must properly make payments from the Trust Funds rather than the Bond Funds.

**FINDINGS OF FACT**

     Debtor purchased cattle and livestock prepetition without making payment for those purchases.  The Packers and Stockyards Act ("PASA") provides that the sellers may be entitled to payment from Debtor's cash bond (Bond Funds), 7 U.S.C. § 204, or from proceeds of the sales of the animals against which PASA impresses a trust for the sellers (Trust Funds), 7 U.S.C. § 196.  The USDA has analyzed the validity of claims filed by the sellers.  Total Trust Claims are $2,058,946.78.  Total Bond Claims are $2,131,131.47.  See Motion, Ex. A, Doc. 237 filed 01/08/09.  The Bond Fund, held by Luana Savings Bank by virtue of a Trust Agreement and Letter of Credit, has a value of $1,245,000, according to Trustee, or $956,111.66, according to the Bank.  Trustee is holding cash proceeds subject to the PASA statutory

trust of approximately $7.4 million.  On January 16, 2009, the Court granted the Motion to Pay, in part, authorizing Trustee to pay the PASA Claims from the Trust Funds and preserving any right Trustee has to demand payment from the Bond Funds.

The Trust Agreement between Debtor and Luana Savings Bank in lieu of the PASA Bond states that the Bank, as "Trustee," may draw funds from Letters of Credit for Debtor subject to a condition:

> If Principal [Debtor] shall pay when due to the person or persons entitled thereto the purchase price of all livestock purchased for purposes of slaughter by Principal for his/her own account, then funds drawn by Trustee [Luana Savings Bank] shall not be liable, but if there are any defaults, failures, or neglects under [this condition], then the funds drawn by the Trustee shall be liable . . .

Brief of Luana Savings Bank, Ex. LSB-1, Doc. 321, filed 1/23/09. A copy of the relevant Letter of Credit is attached as Exhibit LSB-2.

Debtor also had two accounts with Luana Savings Bank.  The account agreements for both of these accounts provide for a right of setoff against any debt owed by Debtor to the Bank.  The setoff provisions further state:  "The right of setoff does not apply to this account if: . . . (c) the debtor's right of withdrawal only arises in a representative capacity."  Bank's Brief, Ex. LSB-7, at 2.  Neither the Trust Agreement or the Letter of Credit contain a setoff provision.  The Bank has filed a claim against Debtor for $800,964.38 arising from an overdrawn account.

**SETTOFF**

The Bankruptcy Code recognizes the right of setoff if there is a mutuality of obligation between the debtor and a creditor. <u>In re Brittenum & Assoc., Inc.</u>, 868 F.2d 272, 275 (8th Cir. 1989).

> The relationship between a depositor and a bank is presumptively that of a debtor and creditor.  However, the presumption of a debtor-creditor relationship is rebutted, and the funds are outside the bank's right of setoff, when the bank is put on notice of a third-party's interest in the deposited funds, for

2

example, when the funds are held in a special account or in trust.

Id. at 275-76; see also Olsen v. Harlan Nat'l Bank, 162 N.W.2d 755, 759 (Iowa 1968) (discussing Iowa law holding that a deposit made for a special purpose cannot lawfully be appropriated by a bank through the right of setoff). In In re Jack-Rich, Inc., 176 B.R. 476, 481 (Bankr. C.D. Ill. 1994), the court held that a bank's setoff against funds held in statutory trust pursuant to PASA was improper.

Based on the foregoing, the Court concludes that Luana Savings Bank does not have a right of setoff against the Bond Funds it holds for Debtor under the PASA Trust Agreement and Letter of Credit. Pursuant to the agreements, these funds are held solely for the benefit of sellers of livestock who were not paid by Debtor. The Bank has been aware of this special purpose for the Trust Agreement and Letter of Credit since their origination. Debtor has no direct right to the Bond Funds and there is no mutual debtor-creditor relationship between Debtor and the Bank regarding these funds.

## PAYMENT FROM TRUST FUNDS OR BOND FUNDS

The Packers and Stockyards Act includes provisions for payment to sellers of livestock from either a 7 U.S.C. § 196(b) statutory trust, added to the Act in 1976, or a 7 U.S.C. § 204 bond. Section 196(b) provides, in pertinent part:

> All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers.

7 U.S.C. § 196(b). Section 204 provides, in pertinent part:

> [T]he Secretary [of Agriculture] may require reasonable bonds from every market agency (as defined in this subchapter), every packer (as defined in subchapter II of this chapter) in connection with its livestock purchasing operations (except that those packers whose average annual purchases do not exceed $500,000 will be exempt from the provisions of this paragraph), and every other person operating as a dealer (as defined in this subchapter) under such rules and regulations as he

3

>    may prescribe, to secure the performance of their
>    obligations.

7 U.S.C. § 204.  "The addition of § 196 to the Act in 1976 was motivated by situations in which sellers of livestock went unpaid, because of the priority interests of secured lenders, when the purchasing packers became insolvent."  <u>Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.</u>, 969 F.2d 1384, 1390 (2d Cir. 1992).  The purpose of the 1976 amendments was to provide future protection for livestock sellers against financial loss experienced when major meat packers went bankrupt in the early 1970's.  <u>Id.</u>, quoting <u>In re Gotham Provision Co.</u>, 669 F.2d 1000, 1018 (5th Cir. Unit B 1982).

Similarly, the underlying purpose of the PASA § 204 bond requirements is to protect livestock sellers against losses caused by defaulting or insolvent buyers, including market agencies, packers and dealers.  <u>Cooper v. American Auto Ins. Co.</u>, 978 F.2d 602, 609 (10th Cir. 1992).  The Secretary has required all market agencies, packers and dealers to execute and maintain a reasonable bond on approved forms.  <u>Id.</u>; 9 C.F.R. § 201.29.  Bonds are not required of packers whose annual purchases do not exceed $500,000.

The parties have acknowledged the dearth of case authority addressing the issue herein, i.e. whether the Bond Funds should first be exhausted before resorting to the Trust Funds to pay PASA claims, or vice versa.  In <u>Gotham Provision Co.</u>, the court noted that PASA does not require that livestock sellers avail themselves of other remedies before invoking the trust provisions of § 196 of the Act.  669 F.2d at 1009 n.9.  Rather, legislative history makes it clear "that the trust section is not dependent on other remedial provisions in the Act, but is the only provision in the amended Act which will ensure that unpaid cash livestock sellers receive full protection."  <u>Id.</u>

Additionally, the Court notes that the reported cases generally presume that a packer's statutory trust funds should be available to pay PASA claims before resorting to the packer's bond.  In <u>Liberty Mutual</u>, the bankruptcy court authorized payment to sellers out of the debtor's assets several months before authorizing payment from a surety bond.  969 F.2d at 1386.  In <u>In re Matheson</u>, 10 B.R. 652, 657 (Bankr. D. Ala. 1981), the court noted that without the debtor's improper use of funds in a custodial account, no demand would have been made on a PASA bond.  The court in <u>In re Frost Morn Meats, Inc.</u>, 7 B.R. 988, 994 (D.C. Tenn. 1980), stated that sellers with claims under § 196 may also have resort to the debtors § 204 bond.  In an older case, <u>Baldwin</u>

4

v. Hartford Acc. & Indem. Co., 168 F. Supp. 86, 112 (D. Neb. 1958), the court concluded that amounts paid to PASA sellers under a bond would be diminished, "of course," to the extent they received a dividend in the livestock dealer's bankruptcy case.

    The Court concludes that existing authority as well as basic surety law provides that Trustee must pay the PASA claims out of Trust Funds held by Trustee before making a claim against Bond Funds held by Luana Savings Bank.  Nothing in the Packers and Stockyards Act requires claimants to first receive payment from the Bond Funds.  The Trust Agreement conditions liability of the Bank on defaults by Debtor in paying PASA claimants.  Trustee now stands in the shoes of Debtor under the Agreement and is able to pay the PASA Claims from statutory trust funds available.  Since Trustee is able to pay the claims, the Bank as Trustee is not liable under the Trust Agreement.  Only if Trustee defaults on full payment to the PASA Claimants will the Bank be liable to distribute the Bond Funds.  The Court also notes that the Trust Agreement states that the Bank, "prior to paying any funds to any claimant, shall determine the total amount due to all claimants under this agreement" and distribute the funds on a pro rata basis.  Bank's Brief, Ex. LSB-1, at 2.  Thus, the Bank need not pay PASA claims out of the Bond Funds until all such claims are finally determined.

## SUMMARY

    The Court holds that Luana Savings Bank does not have a right of setoff against the Bond Funds.  Trustee shall pay the PASA Claims from the Trust Funds it holds under 7 U.S.C. § 196(b).  If those funds are exhausted, the remaining PASA Claims can be satisfied from the Bond Funds held by Luana Savings Bank.

    **WHEREFORE**, Trustee's Motion to Pay USDA Approved PASA Claims is GRANTED IN PART.

    **FURTHER**, Trustee is directed to pay the PASA Claims from the approximately $7.4 million statutory trust funds it is holding pursuant to 7 U.S.C. § 196(b).

    **FURTHER**, if the Trust Funds are exhausted, the remaining PASA Claims shall be paid from the Bond Funds held by Luana Savings Bank pursuant to the Trust Agreement and Letter of Credit between Debtor and the Bank.

**FURTHER**, Luana Savings Bank has no right of setoff against the Bond Funds.

DATED AND ENTERED: February 4, 2009

*[signature]*

---

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE