## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

IN RE:               )      CHAPTER 7
                       )      BANKRUPTCY NO. 08-2751
AGRIPROCESSORS, INC.    )
                       )
       Debtor          )

## MOTION FOR AN ORDER APPROVING
## SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND
## ENCUMBRANCES, TOGETHER WITH RELATED RELIEF

      Joseph E. Sarachek, as Chapter 7 Trustee (the "**Trustee**") of Agriprocessors, Inc. (the "**Debtor**"), by his proposed attorneys, Elderkin & Pirnie, P.L.C., herewith makes this motion (the "**Motion**") (a) to authorize the Trustee to sell certain assets of the Debtor's estate to SHF Industries, LLC ("SHF"), pursuant to § 363(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), free and clear of claims, liens and other encumbrances. In support of the Motion, the Trustee respectfully represents:

### JURISDICTION AND VENUE

      1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief sought herein are sections 105(a), 363(b), (f), (m), (n), and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 9014. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND AND
## RELEVANT PROCEDURAL HISTORY

2.　　On November 4, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of New York (the "New York Court").

3.　　On November 19, 2008, the United States Trustee for Region 2 (the "United States Trustee") appointed an Official Committee of Unsecured Creditors in this case (the "Committee") (Iowa Docket No. 51).

4.　　On November 14, 2008, the United States Trustee moved for appointment of a Chapter 11 Trustee (Iowa Docket No. 37). On November 18, 2008, the New York Court entered an Order Directing the Appointment of a Chapter 11 Trustee (Iowa Docket No. 47). On November 20, 2008, the United States Trustee filed its Notice of Appointment of Joseph E. Sarachek as Chapter 11 Trustee (Iowa Docket No. 54).

5.　　By Order dated November 20, 2008, the New York Court approved the appointment of Joseph E. Sarachek, as the Trustee in this case (Iowa Docket No. 56).

6.　　On November 6, 2008, First Bank Business Capital, Inc. f/b/a FB Commercial Finance, Inc. ("First Bank"), the Debtor's pre-petition lender and provider of post-petition financing until the First Bank Assignment (as defined herein), filed a Motion to Change Venue of the Chapter 11 case (the "Venue Motion") from the Eastern District of New York to the Northern District of Iowa (Iowa Docket No. 8). Various parties, including the Trustee, filed pleadings in support of the Venue Motion and after hearings

2

that concluded on December 12, 2008, Chief Judge Craig of the New York Court entered an Order granting the Venue Motion (Iowa Docket No. 1).

7.     On October 3, 2009, the Court entered its orders converting this case to a case under Chapter 7 of the Bankruptcy Code and appointing Joseph E. Sarachek as Chapter 7 Trustee.

8.     SHF is currently in possession of certain personal property equipment all of which is the subject of various certain leases between Debtor, as lessee, and Omni National Bank ("**Bank**"), as lessor.  The subject personal property is described in the various lease or financing documents between the Bank and the Debtor, which documents are more particularly identified by the following loan and/or lease numbers:

| | | |
|---|---|---|
| 81054703 | OMI-09-33120 | OMI-09-33045 |
| 81150551 | OMI-09-33120 | OMI-09-33045 |
| 401968300 | OMI-09-33120 | OMI-09-33045 |
| 900035800 | OMI-09-33120 | OMI-09-33045 |
| 900084100 | OMI-09-33120 | OMI-09-33045 |
| 3915-001 | OMI-09-33120 | OMI-09-33045 |
| 3915-002 | OMI-09-33120 | OMI-09-33045 |
| 3915-003 | OMI-09-33120 | OMI-09-33045 |
| 3915-021 | OMI-09-33120 | OMI-09-33045 |
| 3915-022 | OMI-09-33120 | OMI-09-33045 |
| 3915-023 | OMI-09-33120 | OMI-09-33045 |

hereinafter referred to as "**Lease Documents**").

9.     The personal property described by and subject to the Lease documents shall hereinafter be sometimes collectively referred to as "**Equipment**", more particularly described on **Exhibit A** attached hereto and incorporated herein.

10.     The Federal Deposit Insurance Corporation ("**FDIC**") as Receiver for Omni National Bank, acquired the interests of the Bank, following the closing of the

3

Bank by the Office of the Comptroller of Currency and the appointment of the FDIC as Receiver of the Bank.

11. The Bankruptcy Court has entered an order dated April 7, 2009, being document No. 636 in the above-captioned matter, granting FDIC, as a secured creditor, relief from the automatic stay with respect to the Equipment, with right to take possession of, and sell and/or otherwise dispose of the Equipment (**"Order for Relief from Stay"**).

12. SHF has made an offer to the Trustee and FDIC to acquire the Equipment free and clear of liens, claims and encumbrances, including those of FDIC, for the purchase price of $1,388,605.25 plus attorneys fees and costs and per diem interest of $37.58 accruing on the Nevel Debt (as defined in the Offer) and (ii) credit bid to the Trustee the amount of $4,000 from one or more of its secured claims against Agriprocessors (the "Purchase Price") (the "Offer") the proceeds of which are expected and intended to be paid over directly to FDIC. A copy of the Offer is attached hereto and incorporated herein. The Trustee believes that the Offer is fair and reasonable and will enable the Trustee to proceed with a sale process.

13. All of the Equipment shall be included in Offer. The Equipment described on Exhibit A as the "Lessor Equipment" may be construed to be FDIC's property and not property of the bankruptcy estate. However, the parties to the Offer consent to its inclusion in a sale by the Trustee under Section 363 due to potential conflicting positions on the legal issue of status of and interests in the Lessor Equipment.

## THE SALE IS SUPPORTED BY SOUND BUSINESS
## JUDGMENT AND SHOULD BE APPROVED

14.    By this Motion, the Trustee requests that the Offer and sale to SHF be approved.    The Trustee believes that the Offer is fair and reasonable.    Section 363(b) of the Bankruptcy Code provides that a trustee, after notice and a hearing, may use, sell, or lease property of the estate other than in the ordinary course of business. In pertinent part, the section provides:

> (b)(1)  The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

See 11 U.S.C. § 363(b)(1).

15.    In order for a court to approve a request for the use of property of the estate outside the ordinary course of business, the court must find that the proposed course of action is supported by sound business reasons.  See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2nd Cir. 1983); see also In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1993); Bartel v. Bar Harbor Airways, Inc., 196 B.R. 268, 273 (S.D.N.Y. 1996); In re Caldor, Inc. NY, 193 B.R. 182, 187 (Bankr. S.D.N.Y. 1996); In re Thomas McKinnon Securities, Inc., 120 B.R. 301 (Bankr. S.D.N.Y. 1990).  In reviewing such proposed transactions, courts should give substantial deference to the business judgment of the trustee or debtor-in-possession.  See e.g., Esposito v. Title Inc. Co. of Pa. (In re Fernwood Mkts.), 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

16.    The Trustee submits that consideration of these factors militates in favor of this Court's approval of a section 363(b) sale process.  It enables the Trustee to sell the assets of the Estate to complete the liquidation of the estate in an efficient and

timely manner. The Trustee seeks approval of the proposed sale subject to the terms of the Offer pursuant to section 363 of the Bankruptcy Code.

17.    Based upon the foregoing, the Trustee submits that the Offer and the proposed sale of the Equipment is in the best interests of the estate and its creditors, and is based upon sound, reasoned and informed business judgment warranting this Court's approval. See In re Lionel Corp., 722 F.2d at 1071; Bar Harbor Airways, Inc., 196 B.R. at 273; In re Caldor, Inc. – NY, 193 B.R. at 187.

18.    The Trustee further submits that ample authority exists for the approval of the sale of the Assets to SHF pursuant to sections 363(b), (f), (m) and (n) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

See 11 U.S.C. § 363(m). In addition, section 363(n) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount . . . [including] punitive damages . . . .

11 .S.C. § 363(n).

19.    The negotiations and the resulting transaction contemplated by the Offer are the result of good faith and arm's length negotiations between the Trustee,

FDIC and SHF and will result in a transaction that is both fair and reasonable in light of the circumstances. The Trustee respectfully requests that sale pursuant to the Offer be approved.

## THE SALE SHOULD BE APPROVED FREE AND
## CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

20.    Pursuant to § 363(f) of the Bankruptcy Code, after notice and a hearing, a trustee may sell property of the estate free and clear of all liens and encumbrances. In pertinent part, the section provides:

> (f)    The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if:
>
> (1)  applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)  such entity consents;
>
> (3)  such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)  such interest is in bona fide dispute; or
>
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

21.    As evidenced by the Offer, FDIC, as a secured party and/or lessor, consents to the sale of the Equipment pursuant to the terms of the Offer. For all the foregoing reasons, the Trustee respectfully requests that the Offer be approved at the Sale Hearing, that FDIC be granted a lien in the proceeds of the sale and that such proceeds be authorized to be distributed to FDIC after approval of the sale at the Sale Hearing.

## MOTION TO REQUIRE ASSUMPTION OR
## REJECTION OF UNEXPIRED LEASES

22.     In addition to the above requested sale, the Lease Documents, to the extent they may be construed to be unexpired leases, were not terminated prior to the commencement of the pending bankruptcy proceeding and are, or may be alleged to be, still in effect. This same issue was raised in the motion which was the subject of the Order for Relief from Stay, but not addressed specifically in that order.

23.     Neither the Debtor nor the Trustee, since the Trustee's appointment, have paid the Bank or FDIC any amounts due and owing under said Lease Documents, and have not surrendered possession of any of the Equipment.

24.     Under the Lease Documents, the Bank, and now FDIC, have the right to take possession of the Equipment upon the default of the Lease Documents.

25.     Cause exists to compel the Trustee to assume or reject the Lease Documents.

26.     The Trustee, FDIC and SHF all agree that neither the Debtor or the Trustee have any equity in the Equipment and that the Lease Documents should be deemed rejected and held terminated pursuant to Bankruptcy Code §365(d)(1), to the extent they may be construed to be unexpired leases, and the Trustee hereby waives any statutory time period in which to assume or reject.

## NOTICE

27.     The Trustee proposes that a true and complete copy of this Motion together with its exhibits be served upon: (a) counsel to SHF, (b) counsel for FDIC, (c) counsel for the Debtor, (d) any Parties  requesting notice who do not receive electronic notice, and (e) the Office of the United States Trustee.

**WHEREFORE,** the Trustee respectfully requests that this Court (I) enter an order approving the Offer and authorizing the sale of the Equipment pursuant to § 363(b) of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules, free and clear of claims, liens and other encumbrances, (II) grant FDIC a lien in the proceeds of the sale, (III) authorize the Trustee to distribute the sale proceeds directly to FDIC after approval of the sale at the Sale Hearing, (IV)hold and order that the Lease Documents, to the extent they may be construed to be unexpired leases, are rejected and terminated pursuant to § 365(d), and (V) grant the Trustee such other and further relief as this Court deems just and proper.

Dated: October 13, 2009.

Respectfully Submitted,

*[signature]*

| Dan Childers | LI0007535 |
| Paula L. Roby | LI1442523 |

115 First Ave. S.E.
P.O. Box 1968
Cedar Rapids, IA 52406-1968
PHONE: (319) 362-2137
FAX: (319) 362-1640
dchilders@elderkinpirnie.com
plroby@elderkinpirnie.com

PROPOSED ATTORNEYS FOR
CHAPTER 7 TRUSTEE

9

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made and entered into this 30
day of _September_, 2009 by and between SHF Holdings, LLC (formerly, SHF
Industries, LLC), an Iowa limited liability company whose principal place of business is
_____, Iowa, ("Buyer"), the Federal Deposit Insurance Corporation ("FDIC")
as Receiver for Omni National Bank, (hereinafter "Seller") and the trustee duly appointed in the
Bankruptcy Case as defined below ("Trustee").

RECITALS:

A.      The Seller acquired the interests of the Omni National Bank, ("Bank"), following
the closing of the Bank by the Office of the Comptroller of Currency and the appointment of the
FDIC as Receiver of the Bank.  The Bank was both a lessor and owner of certain personal
property in the possession of Agriprocessors, Inc. ("Agriprocessors") as lessee and the Seller
has succeeded to the interests of the Bank as lessor and owner of certain personal property in the
possession of Agriprocessors

B.      The Seller also acquired the rights of the Bank as a secured creditor of
Agriprocessors and the Seller has the right to possession of certain other personal property
collateral securing the indebtedness owed to Seller by Agriprocessors and also has the right to
dispose of such collateral as part of a secured party's disposition rights in a foreclosure sale
under the Iowa Uniform Commercial Code, as amended ("UCC").

C.      The specific personal property relevant to this Agreement is described in the
various lease or financing documents between the Bank and Agriprocessors, which documents
are more particularly identified by the following loan and/or lease numbers:

| | | |
|---|---|---|
| 81054703 | OMI-09-33120 | OMI-09-33045 |
| 81150551 | OMI-09-33120 | OMI-09-33045 |
| 401968300 | OMI-09-33120 | OMI-09-33045 |
| 900035800 | OMI-09-33120 | OMI-09-33045 |
| 900084100 | OMI-09-33120 | OMI-09-33045 |
| 3915-001 | OMI-09-33120 | OMI-09-33045 |
| 3915-002 | OMI-09-33120 | OMI-09-33045 |
| 3915-003 | OMI-09-33120 | OMI-09-33045 |
| 3915-021 | OMI-09-33120 | OMI-09-33045 |
| 3915-022 | OMI-09-33120 | OMI-09-33045 |
| 3915-023 | OMI-09-33120 | OMI-09-33045 |

The personal property described by and subject to these documents shall hereinafter be
sometimes collectively referred to as "Equipment", more particularly described on Exhibit "A"
attached hereto or otherwise described on an attachment to this Agreement.

1

EXHIBIT

A

PENGAD 800-631-6989

D.    On November 4, 2008 ("**Petition Date**"), Agriprocessors filed a petition in the United States Bankruptcy Court and its bankruptcy case subsequently was transferred to the Northern District of Iowa ("**Bankruptcy Court**"), case number 08-02751 ("**Bankruptcy Case**").

E.    The Seller desires to sell and the Buyer desires to purchase the Equipment pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the premises and mutual obligations of the parties, it is agreed:

1.    SALE OF ASSETS.

1.1    The Equipment shall be sold in it's entirety free and clear of all liens, claims and encumbrances subject to the approval of the Bankruptcy Court pursuant to Section 363(b) and (f) of the Bankruptcy Code (the "**363 Sale**"). The Buyer, Seller and Trustee shall jointly move the Court for said relief pursuant to 11 U.S.C. §363(b) and (f).

1.2    All of the Equipment shall be included in the 363 Sale. The Equipment described on Exhibit A as the "**Lessor Equipment**" may be construed to be the Seller's property and not property of the bankruptcy estate in the Bankruptcy Case. However, the parties consent to its inclusion in the 363 Sale due to potential conflicting positions on the legal issue of status of and interests in the Lessor Equipment.

1.3    In addition to the foregoing, the various leases between Seller and Agriprocessors related to the Equipment ("**Equipment Leases**") shall be the subject of a motion by the Trustee to reject all such leases under 11 U.S.C. §365 in the Bankruptcy Case ("**365 Motion**") to be filed simultaneously with the motion for the 363 Sale. The parties shall seek an order of the Bankruptcy Court that the bankruptcy estate in the Bankruptcy Case shall retain no interest in the Equipment or the Equipment Leases.

2.    CONSIDERATION. In exchange for the Equipment and subject to section 3 below, (i) Buyer shall pay to Seller the sum of $1,388,605.25 and per diem interest of $37.58 accruing on the Nevel Debt as defined in Section 3 below and (ii) credit bid to the Trustee the amount of $4,000 from one or more of its secured claims against Agriprocessors (the "Purchase Price"). Buyer has already made a nonrefundable deposit with Seller in the amount of **$417,018.78, which Seller shall apply to the Purchase Price on the Closing Date. Said deposit shall be returned to the Buyer in the event a Closing does not occur due to the inability of the bankruptcy court to deliver title free and clear of all liens and encumbrances in accordance with the 363 sale or if the FDIC cannot close the deal because of a lack of authority to do so.** At Closing, upon Seller performing all of its obligations under this Agreement, the balance of the Purchase Price shall be remitted to the Seller.

3.    NEVEL TRANSACTION. Seller and Buyer acknowledge that Buyer wishes to

2

acquire certain real estate owned by Nevel Properties ("Nevel Real Estate") that is subject to a mortgage lien held by the Seller where there is due and owing the sum of $288,605.25 plus attorneys fees and costs and per diem interest of $37.58 from and after September 16, 2009, ("Nevel Debt"). Nevel Properties is the subject of a pending Chapter 11 bankruptcy, case number 09-00415-D in the U.S. Bankruptcy Court for the Northern District of Iowa. In the event that Buyer does not acquire the Nevel Real Estate on or before the Closing Date, the Buyer shall be entitled to a reduction of the Purchase Price in the amount of the Nevel Debt. Nothing contained in this Agreement shall affect any other agreement between Buyer and Seller with respect to the Nevel Debt or the Nevel Real Estate.

4.    CLOSING.    The purchase and sale contemplated herein shall close (the "Closing"): (i) at a time and place which are agreed to by the Seller and Buyer and (ii) as soon as Buyer and Seller meet their respective Closing requirements, not later than ten days after entry of the order of the Bankruptcy Court as required herein, and Closing shall be deemed to have so occurred and be effective as of such date (the "Closing Date") at which time Buyer shall take possession and ownership of the Equipment..

5.    ASSUMPTION OF LIABILITIES OR BENEFITS. The Buyer shall not assume and shall not be liable for any liabilities or obligations of any kind or nature of Seller or Agriprocessors, nor does this Agreement intend any transfer whatsoever of the underlying contractual agreements and/or related rights between Seller and Agriprocessors, nor is this Agreement intended to modify or abrogate any deficiency indebtedness owed to Seller by Agriprocessors or any secondary obligors which rights shall be retained by Seller, provided, however, that Seller's claims against Agriprocessors relating solely to the Equipment are being transferred and sold to the Buyer pursuant to section 1.4 above.

6.    TRUSTEE CONCURRENCE. The Trustee, in his capacity as Trustee and for the bankruptcy estate in the Bankruptcy Case:

6.1    Acknowledges that the Bankruptcy Court has entered an order dated April 7, 2009, being document No. 636 in the Bankruptcy Case, granting Seller relief from the automatic stay in the Bankruptcy Case with respect to the Equipment, with right to take possession of, and sell and/or otherwise dispose of the Equipment.

6.2    Agrees that possession of the Equipment will be transferred to the Buyer upon closing of this Agreement and Bankruptcy Court approval and order related to the 363 Sale and that the Equipment Leases shall be rejected pursuant to Section 365 of the Bankruptcy Code.

7.    NECESSARY ACTS. At Closing, the Trustee and Seller shall perform all acts not already undertaken that are necessary to put the Buyer in actual and complete possession and control of the Equipment, subject to other terms of this Agreement, including Bankruptcy Court approval and orders required herein.

8.    DELIVERY. At the Closing Date the Trustee and Seller shall permit Buyer to take possession of all of the Equipment. Neither Trustee nor Seller shall have any further

3

obligation to assemble or ship the Equipment, or to tender documents or otherwise with respect to the delivery of the Equipment.

9.    TITLE, LIMITATION OF LIABILTY, EXCLUSION OF WARRANTIES.  The Buyer acknowledges that this purchase is a sale with respect to the Equipment as part of the Bankruptcy Case. The Buyer also acknowledges that neither the Trustee nor the Seller is a dealer in goods of this type, that neither the Trustee nor the Seller have, or hold themselves out as having, any knowledge or skill peculiar to the practices or goods involved in this transaction, and that the Buyer has determined to purchase the Equipment upon the basis of the Buyer's own judgment, relying upon such inspection of the Equipment as the Buyer may have seen fit to make prior to execution of this Agreement.

FURTHER, BUYER ACKNOWLEDGES THAT ALL THE EQUIPMENT IS SOLD HEREUNDER "AS IS" AND "WHERE IS". THE TRUSTEE AND SELLER MAKE NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE, THE CONDITION OF THE EQUIPMENT, ITS LOCATION, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. TRUSTEE AND SELLER SPECIFICALLY DISCLAIM ANY SUCH REPRESENTATIONS AND WARRANTIES.

10.    SALES TAXES.  The Buyer will pay all sales, use and other taxes, if any, due in connection with, or as a result of this sale.

11.    SUCCESSORS AND ASSIGNS.    This Agreement shall be binding upon the successors, assigns, heirs and legal representatives of the parties hereto.

12.    PARTY WARRANTIES.    As further consideration and condition of this Agreement, the parties hereto each warrant that no promise or agreement not herein expressed has been made; that in executing this Agreement, the parties hereto are not relying upon any statement or representation made by the opposing parties or said parties' agents, servants, or attorneys, concerning any thing or matter, but are relying solely upon their own judgment. The parties hereto further warrant that the undersigned are respectively properly authorized and legally competent to execute this Agreement.

13.    REPRESENTATIONS AND WARRANTIES OF BUYER. Buyer represents and warrants to Seller that:

a.    Company Organization. Buyer is a limited liability company duly formed validly existing and in good standing under the laws of the State of Iowa.

b.    Authorization of this Agreement. Buyer has taken all necessary action to authorize the execution and delivery of this Agreement and the consummation of the transaction contemplated by this Agreement. This Agreement constitutes a valid and legally binding

obligation of Buyer, enforceable according to its terms.  The execution, delivery of this Agreement and consummation of the transaction contemplated by this Agreement does not and will not violate any provision of the terms of any applicable law, rule or regulation of any governmental body having jurisdiction or conflict with or result in the breach of any provisions of Buyer's Certificate of Organization and Operating Agreement.

          c.     No Adverse Conditions.  No legal action, whether civil, criminal or administrative, is pending or threatened against Buyer that would adversely affect its ability to consummate the transaction contemplated by this Agreement.

    14.    SELLER AUTHORIZATON.  Seller has taken all necessary action to authorize the execution and delivery of this Agreement and the consummation of the transaction contemplated by this Agreement.  This Agreement constitutes a valid and legally binding obligation of Seller, enforceable according to its terms.  The execution, delivery of this Agreement and consummation of the transaction contemplated by this Agreement does not and will not violate any provision of the terms of any applicable law, rule or regulation of any governmental body having jurisdiction.

    15.    ATTORNEY FEES.  In any action with respect to this Agreement, each party agrees to pay their own attorneys fees.

    16.    CONSTRUCTION.  This Agreement shall be construed in accordance with and governed by the laws of the State of Iowa.  If for any reason any provision of this Agreement shall be inoperative, the validity and effect of the other provisions shall not be affected thereby.

    17.    COUNTERPART/TELEFAX SIGNATURES.  This Agreement may be executed in one or more identical counterparts, which, when executed by all parties, shall constitute one and the same Agreement. The parties hereto may accept this Agreement by sending an executed copy of the signature page by telefax or electronic mail to the attorney for the other parties and by forwarding on the same date to the attorney for the other parties the originally executed signature page.

    18.    THIRD PARTY BENEFICIARIES. This Agreement is solely for the benefit of the parties hereto and no provision of this Agreement shall be deemed to confer upon any other person, any remedy, claim, liability, reimbursement, cause of action or other right whatsoever

    19.    ENTIRE AGREEMENT.    This writing contains the entire agreement of the parties, integrates all the terms and conditions mentioned in or incidental to this Agreement and supersedes all prior negotiations and writings. No modification or waiver of any provision of this Agreement shall be valid unless in writing and signed by all the parties hereto. Except as otherwise provided herein, no covenant, representation or condition not expressed in this Agreement, or in an amendment thereto, shall be binding upon the parties hereto or shall affect or be effective to interpret, change or restrict the provisions of this Agreement.

Agreement, or in an amendment thereto, shall be binding upon the parties hereto or shall affect or be effective to interpret, change or restrict the provisions of this Agreement.

20.    SEVERABILITY.    The provisions contained in this Agreement are severable.  A determination that any portion of this Agreement is void or unenforceable shall not affect the validity and enforceability of the remaining portions of the Agreement.

21.    BINDING EFFECT.    Upon signing by all parties, this Agreement shall be binding upon the parties, their heirs, legal representatives, successors and assigns.

22.    AMENDMENTS AND WAIVER.    No amendment, change or modification of any of the terms, provisions or conditions of this Agreement shall be effective unless made in writing and signed by the party against whom such amendment, change or modification is sought to be enforced.  Waiver of any provision of this Agreement shall not be deemed a waiver of future compliance therewith and such provision shall remain in full force and effect.

IN WITNESS WHEREOF, the parties to this Agreement each hereby acknowledge receipt of an original executed copy of this Agreement and that the same was executed in triplicate as of the day and year first written above.

**SELLER:**

FDIC AS RECEIVER FOR OMNI NATIONAL BANK

By: *Jonathan Davis*
Its: *Attorney In Fact*

**BUYER:**

SHF HOLDINGS, LLC

*Daniel Hirsch*
By:  Daniel Hirsch, Managing Director

**TRUSTEE:**

6

Joseph Sarachek

**Exhibit A to ASSET PURCHASE AGREEMENT**
**Between SHF Industries, LLC, ("Buyer"), the Federal Deposit Insurance**
**Corporation ("FDIC") as Receiver for Omni National Bank, (hereinafter "Seller")**
**and the trustee duly appointed in the Bankruptcy Case ("Trustee").**

I.    **LESSOR EQUIPMENT** - See the personal property described on the attached schedules following the cover sheet marked "**Lessor Equipment**", related to the following lease reference numbers:

**81054703**
**3915-002**
**3915-003**
**3915-001**
**81150551**
**3915-023**

II.    **COLLATERAL EQUIPMENT** – See the personal property described on the attached schedules following the cover sheet marked "**Collateral Equipment**", related to the following lease reference numbers:

**900084100**
**900035800**
**401968300**
**3915-021**
**3915-022**

**I.**     **LESSOR EQUIPMENT** - See the personal property described on the following attached schedules, marked with the following lease reference numbers:

**81054703**
**3915-002**
**3915-003**
**3915-001**
**81150551**
**3915-023**



**Omni**
National
Bank

## MASTER LEASE SCHEDULE

SCHEDULE NO. 00001

Name and Address of Lessee:
Aqriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Suppliers:
Conveyors & Plastics
29645 Connelly Mill Road
Delmar, MD 21875

United Rentals (North America), Inc.
2175 Holliday Drive
Dubuque, IA 52002

This Schedule covers the following property (Equipment):

Incline/Horiz. Tray Feed Conveyor with 8" wide series 900 flush grid intralox belts & adjustable valu-guide side rails to accommodate owners trays (assemble incline portion as an independent conveyor & slave drive from the horizontal to allow future change to friction top belt if required).

Portable Emergency Tray Transfer Conveyor with 16" wide series 900 flush grid intralox belt, adjustable valu-guide side rails to accommodate owners trays & 8" locking casters. Provide docking mechanisms for field connection to conve. 11 & 16 length as required by 13'-6" line to line center distance.

Horizontal Tray Feed Conveyor with 8" wide series 900 flush grid intralox belt & adjustable valu-guide side rails to accommodate owners trays.

Manual Product Plows

Genie Scissor Lift, 25ft – 27ft IC 4WD, Model Number GS-2668 RT, Equipment Number 140451, Serial number GS-23128

Total Equipment Cost          $31,765.20

Location of Property (if other than Lessee's above address):

_____

**Lease Term:** The Lease term for all of the items of Equipment under this Schedule shall be forty eight (48) months.

**Rent Payable:**    Rent is due and payable in 48 monthly installments in the amount of $697.43 plus applicable taxes, with the first and last such amounts being due and payable upon execution and delivery of this Schedule. Subsequent scheduled monthly installments shall be due monthly on the fifteenth day of every month beginning on April 15, 2006.

Executed and agreed to this <u>23rd</u> day of March 2006 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the <u>23rd</u> day of March 2006.

OMNI NATIONAL BANK

By: _____
Name: Andy Gerot
Title: AVP

LESSEE: Agriprocessors, Inc.

By: _____  V.P. ago
Name: Sholom Rubashkin
Title: Vice President



**Omni**
National
Bank

## Amended and Restated
## MASTER LEASE SCHEDULE

SCHEDULE NO. 00001

Name and Address of Lessee:
Agriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Suppliers:
F.D. Drake Company
1410 Genicom Drive
Waynesboro, VA 22980

This Schedule covers the following property (Equipment):

All equipment set forth on Exhibit A attached hereto and made a part hereof consisting of 1 page

Total Equipment Cost          $263,524.00

Location of Property (if other than Lessee's above address):

_____

_____

**Lease Term:** The Lease term for all of the items of Equipment under this Schedule shall be sixty (60) months. The Lease term shall commence on the 1st day of the month that follows the month in which the Acceptance Certificate is executed and received (the "Commencement Date"). Interim Interest shall accrue from the date that the Acceptance Certificate is executed and received until the Commencement Date. In the event that Lessee authorizes Lessor to advance funds prior to the issuance of an Acceptance Certificate, Lessee shall also be charged Interim Interest. Interim Interest shall be based on a floating annual interest rate equal to the Prime commercial rate of interest announced by Omni National Bank plus one percent (1.0%) for all amounts outstanding and shall be due monthly in arrears.

**Rent Payable:** Rent is due on the 1st of each month beginning with the Commencement Date, and shall be payable in 60 monthly installments in the amount of $4,130.55 plus applicable taxes. Notwithstanding the above, Lessor reserves the right to change the monthly installments due hereunder in the event of an increase to the 5 year treasury as of July 26, 2007 to the 5 year treasury that corresponds to the date that the final Acceptance Certificate is executed and received.

Executed and agreed to this _____3/5_____ day of July 2007 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 14th day of May 2007.

**OMNI NATIONAL BANK**

By: _____
Name: Andy Gerot
Title: VP

**LESSEE: Agriprocessors, Inc.**

By: _____ , VP. AGRI
Name: Sholom Rubashkin
Title: Vice President

103



**Omni**
National
Bank

Drake Model 1800 Loader Machine Group, serial number 07-596 to receive, orient and
load frankfurters into a Multivac 530 packaging machine in the following configuration:

**[Package 1]**

6" length franks with a finished diameter of 24mm in 2-layer/8-count packages with a
2-lane/8-pocket pattern. Speeds up to 1,600 franks per minute. (Continuous Run) 90-
degree interface.

**[Package 2]**

6" length franks with a finished diameter of 20mm in 1- layer/7-count packages with a
2-lane/6-pocket pattern. Speeds up to 1,600 franks per minute. (Continuous Run) 90-
degree interface.

**[Package 3 & 4]**

Drake Model 1800 Loader Machine Group consists of the following: a) Elevating
    supply conveyor, connected to crossfeed conveyor.
    Stainless steel construction.
b)  Continuous speed crossfeed conveyor delivering product into
    collator. Automatic "product-on-demand" feature for inspection
    station. Stainless steel construction.
c)  Non-recirculating collator to receive, orient and deliver 2 lanes of
    franks to the intermediate conveyor. Stainless steel construction.
    Transfer belt controlled by variable frequency drive.
d)  Stainless steel collator flight chain designed to orient 18-26mm
    finished diameter products.
e)  Dual lane intermediate conveyor with stainless steel flight chains
    and product pan. Positive action product positioning.
f)  Stirrer paddles in collator to improve fill rate. Stainless steel
    motor and gearbox are outside of the product zone.
g) CLX loading head with (4) modular pusher chain assembly.
    Stainless steel construction.
h) Controls package with Allen Bradley color touch screen control
    panel and servo motors to facilitate quick changeovers.
i) Sanitation enhancement package, including: Stainless steel frame,
    stainless steel casters, stainless steel conduit and fittings, and etched warning
    labels.
j)  Ethernet capability
k)  Additional head module to load products

_____
Initals



**Omni**
National
Bank

SCHEDULE NO. 00003

Name and Address of Lessee:
Apriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Suppliers:
Mracek Plumbing Heating & Electric LLC    Beacon, Inc.
3270 120th Street                         100 South Mannheim Road
Waucoma, IA 52171                         Hillside, IL 60162

This Schedule covers the following property (Equipment):

MENS SHOWER AND LOCKER AREA
INFLOOR HEATING SYSTEM FOR THIS AREA
Equipment to include one Munchkin Model 199 M boiler
AIR EXCHANGE SYSTEM FOR 2 AIR EXCHANGES PER HOUR
Equipment to include one Renew-air Model He-900 unit with Armstrong SCU-13 condenser
With hot water coil and air conditiong coil to match system.
AIR CONDITIONING SYSTEM FOR THIS AREA
Equipment to include one Armstrong Model SCU-13 condenser and one Armstrong CAM 36
Air handler and coil.

WOMENS SHOWER AND LOCKER AREA
INFLOOR HEATING SYSTEM FOR THIS AREA
Equipment to include one Munchkin Model 199 M boiler
AIR EXCHANGE SYSTEM FOR 2 AIR EXCHANGES PER HOUR
Equipment to include one Renew-air Model He-900 unit with Armstrong SCU-13 condenser
With hot water coil and air conditiong coil to match system.
AIR CONDITIONING SYSTEM FOR THIS AREA
Equipment to include one Armstrong Model SCU-13 condenser and one Armstrong CAM 36
Air handler and coil.

LAUNDRY ROOM to utilize the same equipment as mens locker room area with 2 air exchanges per hour

Two Lift Station Pumps, Goulds model WS5032D3 3"
Float and Alarm System -Centripro ITT
One Pump Control system; Centripro ITT D31620
One Guide Rail for each Pump; Centripro ITT A10-30 Guide
Check Valves and Piping Hookups; Centripro ITT A9-3C
Includes wiring of pumps and controls

MEN'S LOCKER AREA:
Include 3 AMTEKCO Model MSWS-84 multiple station wash up sinks with 4 each
SLOAN model ETF-500 LT faucets with infrared auto-control for all hot and cold hand
wash and one SLOAN model 70-A thermostatic mixing valve
(6) Koehler K4960-ER-0 bardon urinals with Sloan 195-1 ESS infrared flush valves
(12) Koehler K4350-0 wellwoth commercial toilet and Sloan 111 ESS 3450047
Infrared auto-control flush valves
Hot water heating system for the area to include one Munchkin SSU-60 indirect fired water heater

WOMEN'S LOCKER AREA:
Include 3 AMTEKCO Model MSWS-84 multiple station wash up sinks with 4 each

103

SLOAN model ETF-500 LT faucets with infrared auto-control for all hot and cold hand wash and one SLOAN model 70-A thermostatic mixing valve
(16) Koehler K4350-0 wellwoth commercial toilet and Sloan 111 BSS 3450047 infrared auto-control flush valves
Hot water heating system for the area to include one Munchkin SSU-60 indirect fired water heater
Break Room Sinks
(2) AMTEKCO model MSWS-84 multiple station wash up sinks with 4 each
SLOAN model ETF-500 LT faucets with infrared auto control for all hot and cold hand
Wash and one SLOAN model 70-A thermostatic mixing valve
Water heating supplied from women's bathroom system.

LAUNDRY ROOM:
Wash machine hookups, 3 drains
Venting for dryers with booster fan
Hand sink in first aid area with drain
Water heating system tied in with women's boiler and have one Munchkin SSC-60 Indirect fired water heater

Process water and drain piping
Twelve floor drains
Exhaust fins for bathroom areas
Installation of all necessary water and sewer pipes with shut-off, fitting, supplies, venting, etc.

(20) Trucks, Stainless, 46-1/2" x 42" x 78"
(40) V-Screens, Stainless, 42" x 42", 7-V's
(500) Smokesticks, Stainless, ½" Dia. X 42" long
(20) Casters, Stainless Rigid, 6" x 2" Hi-Temp Wheels
(20) Casters, Stainless Swivel, 6" x 2" Hi-Temp Casters

Total Equipment Cost          $260,201.00

Location of Property (if other than Lessee's above address):

_____

_____

Lease Term: The Lease term for all of the items of Equipment under this Schedule shall be forty two (42) months. The Lease term shall commence on the 1st day of the month that follows the month in which the Acceptance Certificate is executed and received (the "Commencement Date"). Interim Interest shall accrue from the date that the Acceptance Certificate is executed and received until the Commencement Date. In the event that Lessee authorizes Lessor to advance funds prior to the issuance of an Acceptance Certificate, Lessee shall also be charged Interim Interest. Interim Interest shall be based on a floating annual interest rate equal to the Prime commercial rate of interest announced by Omni National Bank plus one percent (1.0%) for all amounts outstanding and shall be due monthly in arrears.

Rent Payable:     Rent is due on the 1st of each month beginning with the Commencement Date, and shall be payable in 42 monthly installments in the amount of $6,094.87 plus applicable taxes provided that the first and last such amounts shall be and due and payable upon execution and delivery of this Schedule.

Executed and agreed to this ____16th____ day of ~~November~~ DECEMBER 2006 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 25th day of September 2006.

LESSOR: OMNI NATIONAL BANK                         LESSEE: Agriprocessors, Inc.

By: _____                      By: _____  VP AGRI
Name: Andy Gerot                                   Name: Sholom Rubashkin
Title: AVP                                         Title: Vice President

103

2



**Omni**
National
Bank

## MASTER LEASE SCHEDULE

SCHEDULE NO. 00001

Name and Address of Lessee:
Apriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Supplier:
Stork Gamco, Inc.
P. O. Box 1258
Gainesville, GA 30503

AquaMaof Technologies
P. O. Box 3599
14135 Tiberias, Israel

This Schedule covers the following property (Equipment):

    All equipment set forth on the Exhibit A attached hereto and made a part hereof consisting of four pages.

Total Equipment Cost:   $1,016,904.20

Location of Property (if other than Lessee's above address):

_____

| | |
|---|---|
| **Lease Term:** | The Lease term for all of the items of Equipment under this Schedule shall be 60 months. |
| **Rent Payable:** | Rent is due and payable in 60 consecutive monthly installments in the amount of $16,930.65 plus applicable tax with the first such amount being due and payable on October 15, 2007. |
| **Special Terms:** | The terms and conditions of the Master Lease Agreement are hereby modified for this Schedule as follows:<br>   •  Lessee and Lessor agree that until Lessor otherwise notifies Lessee in writing, Lessee shall be responsible for the administration and remittance of any property tax associated with the Equipment. |

Executed and agreed to this 18th_____ day of September 2007 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 18th___ day of September 2007.

LESSOR: Omni National Bank

By: _____
Name: Andy Gerot
Title: Vice President

LESSEE: Agriprocessors, Inc.

By: _____
Name: Sholom Rubashkin
Title: Vice President

103

| Description | Length | Width | Height |
|---|---|---|---|
| S. Steel rolling conveyor for filling products in cartons ( without motor) | 3000 | 400 | 750 |
| Plastic flex chain conveyor 2x 50mm chains for full cartons transportation includes; All shafts and bearings S. Steel made | 3250 | 400 | 750 1200 |
| 90° S. Steel rolling conveyor for cartons transfer to the main cartons conveyor includes; All shafts and bearings S. Steel made. | 90° | 400 | 1200 |

| Con. Nr. | Conveyor description & specification | Length mm | Width mm | Height mm | Price $ |
|---|---|---|---|---|---|
| 1 | Incline flight conveyor for supply frozen products from freezer to feed conveyor includes: S. Steel adapt funnel between freezer outlet and conveyor. All shafts and bearings S. Steel made. Belt type : PP INTRALOX Flights height 70mm every 300mm | 2250 | 450 | 3500 5400 | 6,200 |
| 2 | Feed conveyor for supply products to Ishida weight includes; Pneumatic reject arm, and funnel for change product direction to the reject conveyor when weigh or packing machine doesn't operate All shafts and bearings S. Steel made. Belt type : PP INTRALOX | 3700 | 450 | 520 | 7,793 |
| 3 | Belt conveyor for supply plastic bags from packing machine to metal detector All shafts and bearings S. Steel made. Belt type : PP INTRALOX | 5050 | 400 | 300 1100 | 8,074 |
| 4 | Belt conveyor for supply plastic bags from metal detector, to rotating round table includes; All shafts and bearings S. Steel made. Belt type : PP INTRALOX | 2600 | 400 | 900 | 5,540 |
| 5 | Rotating S. Steel table for packing plastic bags into cartons All shafts and bearings S. Steel made. | ø1200 | ø1200 | 850 | 3,073 |
| 6 | Belt conveyor for supply reject frozen products from feed conveyor when weight or packing machine doesn't operate includes; All shafts and bearings S. Steel made. | 3100 | 450 | 495 | 6,174 |
| 7 | Incline flight conveyor for reject frozen products includes: All shafts and bearings S. Steel made. Belt type : PP INTRALOX Flights height 50mm every 300mm | 6750 | 450 | 4750 1150 | 11,790 |

LESSOR: Omni National Bank

By: _____
Name: Andy Gerot
Title: Vice President

LESSEE: Agriprocessors, Inc.

By: _____
Name: Sholom Rubashkin
Title: Vice President

3915-001

| Description | | | |
|---|---|---|---|
| Gravity rolling conveyor for transfer cartons to the main cartons conveyor includes : Pneumatic piston and control elements for tilt the conveyor to the main conveyor | 1800 | 400 | 1200 900 |
| Incline flight conveyor for elevate frozen products from production floor, to the supply conveyor Nr.1.0 Includes: All shafts and bearings S. Steel made. S. Steel hopper. Belt type: PP INTRALOX And flights 100 mm height every 300mm | 4500 | 400 | 400 3800 |
| Belt conveyor for full cartons transportation includes; Belt type : PP INTRALOX All shafts and bearings S. Steel made. | 3500 | 400 | 750 |
| Belt conveyor for full cartons transportation includes; Belt type : PP INTRALOX All shafts and bearings S. Steel made. | 9200 | 400 | 750 |
| Plastic flex chain conveyor 2x chains for full cartons transportation  includes; All shafts and bearings S. Steel made. | 20,100 | 400 | 750 |
| Supply of electrical main switch for each conveyor, wiring to control panel. | | | |
| Main conveyors electric box includes main switch, control box, starter and circuit breakers for each conveyor. | | | |
| **STAINLESS STEEL PLATFORMS** 30 S. Steel supporting Ishida multi head  weigh platform, based on Ishida drawings and specifications includes: Non slipping S. Steel  sealed and fully welded floor 4mm thickness S. Steel hand reels S. Steel stair and hand rails | 3300 | 3300 | 2800 |
| Incline (16°) anti-slip belt conveyor for supply empty cartons on different dimensions from carton storage to the packing room. Belt type: PVC anti slip flex belt. 150 mm side edges to prevent cartons to fall down from the conveyor. Underneath conveyor St. St tray to prevent carton dust falling on product. Support or hanging St. St materials | 22,000 | 420 | 8600 2200 |

LESSOR: Omni National Bank

By: _____

Name: Andy Gerot

Title:  Vice President

LESSEE: Agriprocessors, Inc.

By: _____

Name:  Sholom Rubashkin

Title: Vice President

| Description | | | |
|---|---|---|---|
| Belt conveyor for supply empty cartons on different dimensions from carton storage to the packing room. All shafts and bearings St. Steel made. Belt type: SLET. Including 90° curve R=650 100 mm side edges to prevent cartons to fall down from the conveyor. Underneath conveyor St. St tray to prevent carton dust falling on product. Support or hanging St. St materials | 4250 90° Curve 1950 | 420 | 1800 |
| Belt conveyor for supply empty cartons on different dimensions from carton storage to the packing room. All shafts and bearings St. Steel made. Belt type: Slet Including 90° curve R=650 100 mm side edges to prevent cartons to fall down from the conveyor. Underneath conveyor St. St tray to prevent carton dust falling on product. Support or hanging St. St materials | 1950 90° Curve 4200 | 420 | 1800 |
| Bread crumbs funnel Hopper 100X80 S. Steel table Cover, S. Steel filter. Pipe 8" SCH 5 with Swivel Valve 100X80 S. Steel table | 3 | 6600 | |
| Oil tank (as per your drawing): Volume 7,500 L. Diameter 200 cm. Ladder with security rods. Height (including security rods) 530 cm. Material SS 304. | 1 | 8610 | |

Frigoscandia Gyrocompact Spiral Freezer
Model: GC M6/2-10-24-16 NS CR
26" wide M13-1.5 Frigobelt conveyor and frigodrive system
24 tiers, 888 ft. active belt length
100mm link height
Galvanized evaporator coil w/design capacity of 80 tons of refrigeration -40 degree F evaporation temp measured at the coil.
Hot Gas and/or water defrost
Counter Current Vertical Airflow

LESSOR: Omni National Bank

By: _____
Name: Andy Gerot
Title: Vice President

LESSEE: Agriprocessors, Inc.

By: _____
Name: Sholom Rubashkin
Title: Vice President

Stainless steel plenum and Aluminum Mezzanine
NEMA 4X Stainless Steel Control Panel
Pre-wired internally w/aluminum conduit
Level 1 Caulked enclosure with:

- 4" thick polyurethane walls
- fluorescent lighting
- stainless steel interior and exterior

Dimensions of 27'x14'3"x13'91/4" as per layout

LESSOR: Omni National Bank

By: _____

Name: Andy Gerot
Title: Vice President

LESSEE: Agriprocessors, Inc.

By: _____

Name: Sholom Rubashkin
Title: Vice President



# Omni
National
Bank

## MASTER LEASE SCHEDULE

SCHEDULE NO. 00001

Name and Address of Lessee:                Name and Address of Suppliers:
Apriprocessors, Inc.                       New Bruswick International
220 West Street                            76 Veronica Avenue
Postville, IA 52162                        Somerset, NJ 08873

This Schedule covers the following property (Equipment):

One (1)      HI/BL-3600 Top and bottom labeling machine V3.04 REV.C4 Right to Left s/n: 060551001
One (1)      Barcode Verifier Kit
One (1)      NET Controller, AEXEON FRT to follow

Total Equipment Cost        $70,045.04

Location of Property (if other than Lessee's above address):

_____

Lease Term: The Lease term for all of the items of Equipment under this Schedule shall be forty eight (48) months.

Rent Payable:    Rent is due and payable in 48 monthly installments in the amount of $1,645.11 plus applicable taxes, with the first and last such amounts being due and payable upon execution and delivery of this Schedule.  Subsequent scheduled monthly installments shall be due monthly on the first day of every month beginning on October 1, 2006.

Executed and agreed to this ___25___ day of September 2006 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the __25__ day of September 2006.

OMNI NATIONAL BANK                          LESSEE: Agriprocessors, Inc.

By:_____                  By:_____  N. f. 'NORI
Name:  Andy Gerot                           Name: Sholom Rubashkin
Title:  AVP                                 Title: Vice President


**Omni**
National
Bank

<u>REVISION and AMENDMENT to MASTER LEASE SCHEDULE 00001 dated January 16, 2007</u>

SCHEDULE NO. 00001

Name and Address of Lessee:
Apriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Suppliers:

| | | | |
|---|---|---|---|
| Capital City | Heat and Control, Inc. | Pacmac, Inc. | Radion Engineering Company Limited |
| & Machine Works, Inc. | 21121 Cabot Blvd. | P. O. Box 360 | 11 Ha'sivim St., P. O. B. 7111 |
| 2600 E. Market Street, Ste 200 | Hayward, CA 94545 | Fayetteville, AR 72702 | Petah-Tikvah 49250 |
| Des Moines, IA 50317 | | | Israel |

This Schedule covers the following property (Equipment):

KEMCO Gas Fired Thermefficient-100 Patented Oxygen Stripping Direct Contact Water Heater rated at 9.00 million BTU per hour.
Kemco breeching (45 feet of horizontal portion) will be all 316L stainless steel while the vertical 65 feet will be 316L stainless inner liner with aluminum outer shell
(2) 100 gpm 25 HP Grundfos pumps with one having a head pressure of 100 psig and other 225 psif and both with a 480 volt, 3O 60 H2 VFD.
(2) 36.5 gpm at (1200 psig) Hydra-Cell pumps with 50 HP 900 RPM ODP chassis 480 volt, 3O 60 Hz VFD controlled. These pumps along with the Kemco heater can provide sanitizing high pressure water washing for 100,000+ ft2 of processing area.
(1) Ventilated NEMA 12 panel for housing five variable frequency power sources.
    a.  3 inch operator interface non touch screen -- H/MI (human/machine interface);
    b.  five pressure transducers;
    c.  analog in and out for control of set point pressures;
    d.  overpressure valves to protect positive displacement pumps;
    e.  flow switches to assure pumps are not operated without water;
    f.  DN loader software with program (compact disk to reload program into PLC).
Steam Unit heater to attemperate 3500 cubic feet of combustion air from 20 degrees to 50 degrees Fahrenheit;
A 60" x 60" two partition automatic louver which will provide up to 6000 CFM of combustion air;
A Quicklub Lubrication System (by Hydra-Cell) #301/311 for servicing all booster pumps' bearings (including the 300 gpm 45 psig pump by Kemco);
Each model D/G-35 Hydra-Cell pump must have five quarts of hydraulic oil to function.
To assure a reliable/constant oil supply to the pumps a small reservoir with an electronic monitoring eye will be installed on top of each pump.
Pipe Insulation
Controls and Regulating Valves

Pacmac Vertical Form, Fill and Seal Machine, model 9500F, to include Forming Tube Assembly and Funnel and additional equipment:
Markem Date Code Bracket, Markem Smart Date Thermal, Ultrasonic Assembly, Ultrasonic Support Assembly, Bag Deflator Assembly, Gas Flush Assembly, Vertical Tear Notch Assembly, Flange Zipper Gusset Tube Assembly, Funnel, Forming Tube Assembly, Funner, Stager Assembly, LH Heater Bar Assembly, RH Heater Bar Assembly.

Ishida Weigher, Model CCW-R Series, R-214W-S/50-WP, includes Error Reject Software with Single Hopper Participation.
Washrack-CCW, Washrack for Ishida CCW Sheet Metal
Stand-CCW, Support Stand for Ishida CCW Weigher(s)

103

DACS-HN-012-CR-1, Ishida Checkweigher DACS-HN Serires
RE-H-030-A3/CR Ishida Rejector for DACS-H Serires

1 PC Wing Burning Machine – specially developed for Kosher Processing, with 2 burning lines (belts), specially developed burners for continuous operation, stainless steel vapor collector, machine built in stainless steel, belts are speed adjusted.

Total Equipment Cost          $850,818.74

Location of Property (if other than Lessee's above address):
_220 WEST ST._
_POSTVILLE, IA  52162_

**Lease Term:** The Lease term for all of the items of Equipment under this Schedule shall be sixty (60) months. The Lease term shall commence on the 1st day of the month that follows the month in which the Acceptance Certificate is executed and received (the "Commencement Date"). Interim Interest shall accrue from the date that the Acceptance Certificate is executed and received until the Commencement Date. In the event that Lessee authorizes Lessor to advance funds prior to the issuance of an Acceptance Certificate, Lessee shall also be charged Interim Interest. Interim Interest shall be based on a floating annual interest rate equal to the Prime commercial rate of interest announced by Omni National Bank plus one percent (1.0%) for all amounts outstanding and shall be due monthly in arrears.

**Rent Payable:**     Rent is due on the 1st of each month beginning with the Commencement Date, and shall be payable in 60 monthly installments in the amount of $15,250.53 plus applicable taxes.

Executed and agreed to this _____10th_____ day of May 2007 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 16th day of January 2007.

LESSOR: OMNI NATIONAL BANK

By: _____
Name: Andy Gerot
Title:  AVP

LESSEE: Agriprocessors, Inc.

By: _____
Name: Sholom Rubashkin
Title: Vice President

103

2

3915-023

**II.    COLLATERAL EQUIPMENT** – See the personal property described on the following attached schedules, marked with the following lease reference numbers

**900084100**
**900035800**
**401968300**
**3915-021**
**3915-022**



# Omni
### National
### Bank

<u>RESTATED MASTER LEASE SCHEDULE</u>

SCHEDULE NO. 00002

Name and Address of Lessee:
Agriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Suppliers:
Orion Computer Services
700 E Blackhawk Ave
Prario du Chien, WI 53821

This Schedule covers the following property (Equipment):

All equipment on the attached Exhibit A attached hereto and made a part hereof consisting of three pages

Total Equipment Cost                    $93,403.50

Location of Property (if other than Lessee's above address):

_____

Lease Term: The Lease term for all of the items of Equipment under this Schedule shall be thirty -six (36) months.

Rent Payable:   Rent is due and payable in 36 monthly installments as follows:

The first two and last monthly installments shall be in the amount $2,386.00 and have been paid.

Subsequent monthly installments commence on February 15, 2006 and shall be in the amount of $3,041.11.

Executed and agreed to this **9th** day of February 2006 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 9th day of November 2005.

OMNI NATIONAL BANK

By: _____
Name: Andy Ocrot
Title: AVP

LESSEE: Agriprocessors, Inc.

By: _____
Name: Sholom Rubashkin
Title: Vice President

103                                              90084100

## Exhibit A to Restated Master Lease Schedule 00002
## Dated February 9 _____, 2006

| DESCRIPTION | QTY |
|---|---|
| 512MB DDR Kit LTD-PE2650/512 (2 Piece kit) (delivered 12/14/05) | 1 |
| Sales Tax | |

| DESCRIPTION | QTY |
|---|---|
| Belkin F1U126-KIT Parallel Switch | 1 |
| Belkin F2A047-10 Pro IEEE Switchbox Cable, 10' | 2 |
| 6' IEEE Printer Cable | 1 |

| DESCRIPTION | QTY |
|---|---|
| Linksys 16port 10/100 switch | 2 |
| Linksys 24port 10/100 switch | 1 |
| USB to Serial adapter | 1 |
| Sales Tax | |
| Surge Protector | 2 |

| DESCRIPTION | QTY |
|---|---|
| Cisco Catalyst WS-C2970G-24 24port 10/100/1000 Switch | 1 |
| Smartnet 9x5 NBD for C2970 CON-SNT-PKG6 | 1 |
| Cisco Catalyst 2950 24-port Switch # WS-C2950-24 | 3 |

| DESCRIPTION | QTY |
|---|---|
| IBM Extended Warranty for 3051 LTO Tape Drive, 9x5 NBD | 1 |
| Milan Media Converters FO to RJ45 MIL-RC3112US | 2 |
| APC BackUPS BE350 Battery Backup Unit | 2 |
| Cisco Rack Mount Kit for 1811 ACS-1000-RM-19= | 1 |
| APC Environmental Monitoring Unit AP9319 | 1 |
| Professional Service Level B (MCP), Order #15964 | 0.25 |
| Professional Service Level C (MCSE), Order #15964 | 3.25 |
| Trip Charge, Zone 2 (15-25 miles) | 1 |
| Professional Service Level B (MCP), Order #16104 | 1.5 |
| Professional Service Level C (MCSE), Order #16104 | 71.5 |
| Trip Charge, Zone 2 (15-25 miles) | 9 |

| DESCRIPTION | QTY |
|---|---|
| XSeries 306 P-O 3.0GHz DC | 1 |
| 2MB 2x512MB CD OB SATA/SAS HS GIGA | |
| Additional 2x512MB PC4200 CL3 ECC SDRAM (2GB total) | 1 |
| 250GB STAT Hard Drive (Hot Swap, Mirrored RAID1 | 2 |
| Configuration) | |
| Hardware and software configuration, load, test, burn-in | 1 |
| Microsoft Windows 2003 Server Standard, w/5 CALs | 1 |
| Veritas Backup Exec 10D Win Remote Agent | 1 |
| IBM Smart UPS 3200VA RM 2U 120V Battery back up unit | 1 |

| DESCRIPTION | QTY |
|---|---|
| IBM ThinkCentre A51 | 4 |
| Microsoft Office Basic | 4 |
| 17" Flatpanel Monitor | 4 |

| DESCRIPTION | QTY |
|---|---|
| Cisco 1811 Router (for New York office) | 1 |
| Cisco 8x5 NBD Smartnet support for 1811 Router | 1 |
| Professional Service Level C (MCSE), Order #16538 | 16 |

| DESCRIPTION | QTY |
|---|---|
| Professional Service Level B (MCP), Order #16233 | 3.5 |
| Professional Service Level C (MCSE), Order #16233 | 3 |
| Trip Charge, Zone 2 (15-25 miles) | 1 |
| Professional Service Level B (MCP), Order #16504 | 14 |
| Professional Service Level B (MCP), Order #16504 (overtime 1.5X) | 2 |
| Trip Charge, Zone 2 (15-25 miles) | 2 |
| 15' CAT5 Patch Cable | 1 |
| Professional Service Level B (MCP), Order #16569 | 1.25 |
| IBM Ultra 320 PCI SCSI Adapter | 1 |
| Professional Service Level B (MCP), Order #16696 | 1 |
| Professional Service Level C (MCSE), Order #16696 | 2 |
| Professional Service Level B (MCP), Order #16700 | 2.5 |
| Professional Service Level C (MCSE), Order #16700 | 5.5 |
| Microsoft Windows XP Pro Upgrade | 1 |
| 10GB Western Digital Hard Drive | 1 |
| Professional Service Level B (MCP), Order #16718 | 24.25 |
| Professional Service Level C (MCSE), Order #16718 | 17 |
| Trip Charge, Zone 3 (25-35 miles) | 5 |
| Cisco 1811 Router (for Gordon, NE) | 1 |
| Cisco 8x5 NBD Smartnet support for 1811 router | 1 |
| Professional Service Level C (MCSE), Order #16796 (Gordon, NE router programming) | 20 |

| DESCRIPTION | QTY |
|---|---|
| Server, IBM xSeries 346X (Domain Controller 2x 3.2GHz, 2GB, 3x73GB R5, RPS) | 2 |
| Server, IBM xSeries 346X (IIS Configuration 2x 3.2GHz, 2GB, 2x73GB R1, RPS) | 2 |
| Server, IBM xSeries 346X (SQL Server Configuration 2x 3.2GHz, 4GB, 3x73GB R5, RPS) | 2 |
| Server Assembly and Test | 6 |
| Microsoft Windows 2003 Server, 5CAL | 6 |
| Veritas Back up Exec 10D Upgrade V101990-0_BU55 | 1 |
| Veritas SQL Agent Upgrade V181186-0LBU55 | 1 |
| Veritas SQL Agent Full V101198-0LB000 | 1 |
| Veritas Remote Agent Full S100648-0LB000 | 1 |
| Microsoft SQL Server 2005 228-04455 | 2 |
| Microsoft SQL Server 2005 CAL 359-01822 | 13 |
| Belkin 8 Port KVM Switch | 1 |
| Trip Lite 36" heavy duty outlet strip | 1 |
| IBM UPS 3000XLV 2130830 | 2 |
| Rack 1x5 Power Cord | 12 |
| NAS, IBM xSeries 346 Storage Server 884017U | 1 |
| Tape Drive, IBM LTO2 1.6/3.2TB 3501L28 | 1 |
| 3U Rack Mount Kit for 3581 LTO2 Tape Drive | 1 |
| 5pk LTO2 200/400GB Tapes 71P0159 | 2 |
| Cisco 1811/K9 Router | 1 |
| Smartnet 9.5 NBD for 1011CON-SNT-PKG1 | 1 |

OMNI NATIONAL BANK

By: _____
Name: Andy Gerot
Title: AVP

LESSEE: Agriprocessors, Inc.

By: _____
Name: Sholom Rubashkin
Title: Vice President

90084100



Omni
National
Bank

## MASTER LEASE SCHEDULE

Name and Address of Lessee:
Apriprocessors, Inc.
220 West Street
Postville, IA 52162

SCHEDULE NO. 00001
Name and Address of Suppliers:
Unified Barcode & RFID Inc
2176 Frost RD
Schaumburg, IL 60195

This Schedule covers the following property (Equipment):

Ten (10) Term: 1224, PC, COLR, 64M, TCH, S3KY On-Board Radio
S/N's:
S05152000500894
S05152000500982
S05152000500995
S05152000501074
S05152000501256
S05152000501330
S05152000501343
S05152000501364
S05152000501400
S05152000501407

Two (2) DC Line Cords for four slot cradle; Ten (10) Standard Battery Packs

Five (5) AP4131 Dipole Antennas; 24 Volt Power Adapters s/n's;
S00A0F8C985A6
S00A0F8C98677
S00A0F8C9880C
S00A0F8C988A3
S00A0F8C98ADD

One (1) Single Slot Cradle (w/Spare charging, Serial for the MC900) s/n: SM1J09W22W; Ten (10) 3DB1 High Perform Antenna Ethernet Access w/ 4ft Antenna; and Three (3) Power Supplies for PDT7500

Total Equipment Cost          $48,022.56

Location of Property (if other than Lessee's above address):

_____

_____

**Lease Term:** The Lease term for all of the items of Equipment under this Schedule shall be forty eight (48) months.

**Rent Payable:**    Rent is due and payable in 48 monthly installments in the amount of $1,209.00 plus applicable taxes, with the first and last such amounts being due and payable upon execution and delivery of this Schedule. Subsequent scheduled monthly installments shall be due monthly on the 1ˢᵗ of every month beginning on December 1, 2005.

Executed and agreed to this _____9_____ day of November 2005 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the _____9_____ day of November 2005

**OMNI NATIONAL BANK**

By: _____
Name: Andy Gerot
Title: AVP

LESSEE: Apriprocessors, Inc.

By: _____ VP July
Name: Sholom Rubashkin
Title: Vice President



**Omni**
National
Bank

**MASTER LEASE SCHEDULE**

SCHEDULE NO. 00001

Name and Address of Lessee:

Agriprocessors, Inc.
220 Wall Street
Postville, IA 52162

Name and Address of Supplier:

CEM Corporation
12750 Collections Center Dr.
Chicago, Illinois 60693

This Schedule covers the following property (Equipment):

Smart Trac System (serial# ST2129, MG2239, and SL7068), Smart System 5 120/240, 60/50HZ, Food Processor -- 14 Cup, Fat and Moisture Analysis Installation and Training, Consumables Kit - Smart Trac, Pad Kit – 24 boxes.

Total Equipment Cost              $66,225.24

Location of Property (if other than Lessee's above address):

_____
_____
_____

**Lease Term:**    The Lease term for all of the items of Equipment under this Schedule shall be 48 months.

**Rent Payable:**    Rent is due and payable in 48 monthly installments in the amount of $1,680.84 plus applicable tax with the first such amount being due and payable on April 15, 2005.

Executed and agreed to this 27th day of April 2005 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 27th day of April 2005

**OMNI NATIONAL BANK**

By: _____
Name; Andy Gerot
Title: AVP

LESSEE: Agriprocessors, Inc.

By: _____ , V.P. AG/H
Name: Sholom Rubashkin
Title: Vice President



**Omni**
National
Bank

## MASTER LEASE SCHEDULE

### SCHEDULE NO. 001

Name and Address of Lessee:
Agriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Suppliers:
The Minnesota Chemical Co.          Stork Gamco
2285 Hampden Avenue                 PO Box 1258
St. Paul, MN  55114                 Gainesville, GA 30503

Venture Computer Systems            Mracek Plumbing Heating Electric LLC
3416 Lakeridge Pl, NW               3270 120th Street
Rochester, MN  55902                Waucoma, IA 52171

Truck Country of Iowa
10783 Route 61
Dubuque, IA  52004

This Schedule covers the following property (Equipment):

Three (3) Milnor 30022V6J 55-60# Washer Extractors
Three (3) Huebsch HT075NRQ 75lb. Natural Gas Heated Dryers
One (1) Stork D-161 Refurbished Picker
One (1) Cisco 2821 Security BNDL w/IOS Adv. Security
One (1) 4Port 10/100 ENET Switch Interface Card
Three (3) Cisco 1811 Duel ENET Security Router w/V92 Modem Backup
One (1) 2003 Freightliner FLD120      1FUJAHBD23DL88502
One (1) USDA Air conditioning System
One (1) Customer Service Air Conditioning and Make-up Air System including all equipment and controls
One (1) Upper Office Area for Plant Managers Air Conditioning and Make-up Air System including all equipment and controls
One (1) Air Conditioning System for Electrical Control Room
One (1) Air Conditioning System for Computer Room
One (1) Air Conditioning System for Synagogue Main Area
One (1) Cummins Engine N14 (525 HP) and all associated parts  s/n GRE214800

Total Equipment Cost          $225,581.11

Location of Property (if other than Lessee's above address):
    220 WEST STREET
    POSTVILLE, IA  52162

Lease Term: The Lease term for all of the items of Equipment under this Schedule shall be Forty (40) months.

Rent Payable:    Rent is due and payable in 40 monthly installments in the amount of $6,340.61 plus applicable taxes, monthly installments shall be due monthly on the 1st of every month beginning on April 1, 2008.

Executed and agreed to this _____ day of March 2008 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 3rd day of March 2008

OMNI NATIONAL BANK

By: _____
Name: Andy Gerot
Title:  VP

LESSEE: Agriprocessors, Inc.

By: _____  V.P. AGRI
Name: Sholom Rubashkin
Title: Vice President

103



**Omni**
National
Bank

<u>MASTER LEASE SCHEDULE</u>

SCHEDULE NO. 002

Name and Address of Lessee:
Apriprocessors, Inc.
220 West Street
Postville, IA 52162

Name and Address of Suppliers:
Beehive Inc.
9100 South 500 West
Sandy, UT 84070

This Schedule covers the following property (Equipment):

One (1) Beehive Model RSTD 06 Separator, serial number 1339
with (2) spare sets: .125/.100 Chamber, Auger, Ring Valve and Slinger Spacer,
(1) spare set: .060/.040/.031 Chamber, Auger, Ring Valve and Slinger Spacer

Total Equipment Cost            $152,324.00

Location of Property (if other than Lessee's above address):
_220 WEST STREET_
_POSTVILLE, IA 52162_

Lease Term: The Lease term for all of the items of Equipment under this Schedule shall be sixty one (61) months.

Rent Payable:    Rent is due and payable in 61 monthly installments on the first day of each month with the first such amount being due and payable on May 1, 2008. The first 60 installments shall be in the amount of $2,697.05 plus applicable taxes. The 61st and final installment shall be in the amount of $22,848.60 due and payable on April 15, 2013.

Executed and agreed to this _____ day of March 2008 as a Schedule under and which incorporates all of the terms and conditions of the Master Lease Agreement between Lessor and Lessee dated as of the 3rd day of March 2008

OMNI NATIONAL BANK

By: _____
Name: Andy Gerot
Title: VP

LESSEE: Agriprocessors, Inc.

By: _____ , V.P. AGRI
Name: Shalom Rubashkin
Title: Vice President

103